STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| Town of Hartford, Plaintiff, | } | |
| | } | Docket No. 72-3-00 Vtec |
| v | } | |
| | } | Environmental Court |
| Marc and Susan Wood, | } | |
| Defendants. | } | |

| | | |
|---|---|---|
| In re: Appeal of Marc and Susan Wood | } | |
| | } | Docket No. 91-5-00 Vtec |
| | } | |
| | } | Environmental Court |
| | } | |

| | | |
|---|---|---|
| Town of Hartford, Plaintiff, | } | |
| | } | Docket No. 219-5-00 Wrcv |
| v | } | |
| | } | Windsor Superior Court |
| Marc and Susan Wood, | } | |
| Defendants. | } | |

Decision and Order

The Town of Hartford is represented by William F. Ellis; Appellant Marc Wood has appeared and represents himself. In Docket No. 72-3-00 Vtec, the Town of Hartford seeks injunctive relief and fines against Defendant-Appellants. In Docket No. 91-5-00 Vtec, Appellants Marc and Susan Wood appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Hartford, upholding the Notice of Violation regarding the matters which are the subject of the enforcement action in Docket No. 72-3-00 Vtec. These two matters both relate to Phase II[1] of Defendant-Appellants= project. The Court held an evidentiary hearing on these two Environmental Court cases and a related civil case in Superior Court: Docket No. 219-5-00 Vtec.

Motion to Dismiss

Defendant-Appellants moved to dismiss the claims of the Town in Docket No. 72-3-00 Vtec in Counts II and III of its amended complaint: that the concrete slabs do not comply with the specifications in the permit, and that the soil erosion controls required by the permit have not been maintained. The basis for Defendant-Appellants= motion is that the Town failed to give Defendant-Appellants the required seven days to cure, as provided in 24 V.S.A. ' 4444.

However, the Town does not seek fines against Defendant-Appellants in its amended complaint. Section 4445 (and ' 4470(c)) allow a complaint for injunctive relief to enforce a permit or a ZBA order without the seven days notice to cure provided in ' 4444. Further, a notice of violation sent

to Defendant-Appellants in February 2000 provided an adequate notice for the purposes of the amended complaint, if one were required.

Accordingly, Defendant-Appellants= Motion to Dismiss is DENIED.

Merits

The issues presented to the court in the present proceeding are whether the approved plan for Phase II shows any part of a retaining wall to be constructed on the Town= s so-called Fire Department property, and whether the retaining wall as now proposed meets the design specifications as approved in the permit.

The Zoning Board of Adjustment and Planning Commission approved Defendant-Appellants= Phase II project in the spring of 1999. The approvals were not appealed and became final. The approvals required Defendant-Appellants to obtain easements from the Town for ingress and egress over and the stockpiling of snow on the Fire Department property. The Town granted Defendant-Appellants a non-exclusive easement for ingress and egress to the former Cascadnac Grange property A and for no other purpose,@ except that it allowed them to stockpile snow within and along the eastern boundary of the easement area.

Defendant-Appellants= Phase II plans call for a retaining wall to support the built-up area of the upper level of the site. The site plan originally approved by the Planning Commission for Phase II shows an unidentified line running diagonally across the Fire Department property, which Defendant-Appellants now claim was the foot of their retaining wall. It cannot be reasonably interpreted as the foot of a retaining wall, both because the plan does not identify it as such, and because Defendant-Appellants did not seek to have the later-acquired easement include the placement of a retaining wall on the Fire Department property.

The specifications approved in the permit for the retaining wall were a dry-laid sloping concrete slab wall, with slabs meeting the following three specifications: 1) minimum slab thickness of 10 inches; 2) only slabs that have been sawn and have maintained their integrity during removal may be used; hammered slabs are unacceptable; and 3) any steel shall be removed prior to slab placement if another slab will bear on it. The soils specified in the permit for backfill were to meet the specifications of SP, SW, GP, or GW soil.

Defendant-Appellants have acquired slabs from highway reconstruction projects, and have stockpiled the slabs at the site. The slabs range from seven (7) to ten (10) inches in thickness. The ends of some of the slabs have been hammered rather than sawn. Steel reinforcing bars (rebar) protrude from the ends of the slabs. For these three reasons they do not meet the specifications for the slabs in the permit as approved.

However, it remains entirely possible that the slabs can be used safely for the construction of Defendant-Appellants= project. As long as the hammering is on the ends of the slabs rather than on their load-bearing faces, it is possible that the specifications can be amended to allow slabs hammered on their ends. As long as the protruding rebar protrudes from the ends of the slabs and is used to anchor a smooth face for the retaining wall, it is possible that the specifications can be amended to allow slabs with protruding rebar. As long as the thicknesses of the slabs are reasonably uniform throughout each slab, and are not less than seven inches, it is possible that the specifications can be amended to allow slabs of less than ten inches of thickness. However, Defendant-Appellants must apply to the permitting authority for approval of the amended certifications; this Court cannot approve such amendments in the first instance. This is because the permits became final without appeal, and are not before this court. The above-captioned cases only address the Town= s efforts to enforce the terms of the original permit, and Defendant-Appellants= appeal of the notice of violation issued by the Town.

Similarly, if the project as now proposed will involve a retaining wall that is vertical for up to 15 feet before beginning to slope backwards, it is possible that the slabs and fill as now proposed to be used can be used to construct such a wall with an adequate margin of safety. But, as with the specifications for the slabs, Defendant-Appellants must submit the newly- designed proposal for approval to the Town= s permitting authority, as an amendment to the previously-approved plans.

Accordingly, based on the foregoing, judgment is hereby entered for the Town on its complaint in Docket No. 219-5-00 Wrcv, for the Town on its complaint in Docket No. 72-3-00 Vtec, and for the Town in Defendant-Appellants= appeal of Docket No. 91-5-00 Vtec. If the Town wishes a separate judgment order, it may submit one for the Court= s signature.

This decision concludes the above-captioned Environmental Court cases. The Vermont Supreme Court dismissed Defendant-Appellants= appeal of 150-4-00 Wrcv as untimely. The issues concluded in that case became final; only Defendant-Appellants= counterclaim remains in that case. Similarly, all that now remains in 219-5-00 Wrcv are Defendant-Appellants= counterclaims. Accordingly, it is Judge Wright= s understanding that any remaining issues in the two Windsor Superior Court cases are to be determined by the presiding judge of the Windsor Superior Court. By a copy of this order, we request that the Chief Administrative Judge issue a reassignment reflecting that understanding.

Please be advised that this decision and order is one of five orders issued today in the six related cases, disposing of all pending matters.

Dated at Barre, Vermont, this 21st day of September, 2001.


_____
Merideth Wright
Environmental Judge

---

**Footnotes**

[1.]     The project has two alternative versions, which are called 'Phase II' and 'Phase III.' Despite use of the term "phase," these are not successive stages of a single project, but are rather alternative designs. That is, if 'Phase II' is approved and built, 'Phase III' will not be approved and built (and vice versa).